UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VICTOR GUITY, ET AL                          CIVIL ACTION

VERSUS                                       NO: 11-2506

LAWSON ENVIRONMENTAL SERVICE,                SECTION:
LLC, ET AL                                   J(1)

## ORDER AND REASONS

Before the Court is a *Motion for Attorneys' Fees and Costs* **(Rec. Doc. 102)** filed by Defendant and Cross Claimant, United States Environmental Services, L.L.C. ("USES"), as well as an *Opposition* **(Rec. Doc. 109)** by Cross Claim Defendant, Lawson Environmental Services, L.L.C. ("Lawson"), and USES' *Reply* (**Rec. Doc. 117**). Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motions should be **GRANTED in part.**

## PROCEDURAL AND FACTUAL BACKGROUND

This claim arises out of an issue of contractual interpretation. In 2007, USES entered into a contract with BP America Company to provide oil spill clean-up services in connection with the Macondo well incident. (Rec. Doc. 1-02-1, p. 1). In January, 2010, USES entered into another "Master Service Contract" with BP Exploration and Production, Inc. ("BPE"), which

1

extended the terms of the original agreement through December 31, 2010. (Rec. Doc. 102-1, p. 1). On July 11, 2010, Lawson also entered into a Master Service Contract with BPE to provide oil spill clean-up services. Both USES' and Lawson's contracts contained cross-indemnification provisions. (Rec. Doc. 102-1, p. 2).[1]

Robinson Quintero and Victor Guity (collectively "Plaintiffs") were employed by Lawson to perform work in connection with Lawson's contract with BPE. On October 7, 2010, Plaintiffs were performing duties aboard the M/V BOOMER II in connection with the contract, and allege they were injured when the M/V BOOMER II collided with another vessel owned by Lawson. (Rec. Doc. 102-1, p. 3). On October 6, 2011, Plaintiffs filed a lawsuit against Lawson and subsequently amended their complaint to add USES as a defendant. In its answer, on November 5, 2012, USES asserted a cross-claim

---

[1] The indemnification language contained in the Master Service Contracts reads as follows:

14.04      <u>Cross Indemnity Provision</u>: To the extent Company's other contractor(s) executes cross indemnification and insurance and waiver provisions substantially similar to those contained in this Section 14.04:

14.04.01      Contractor agrees to Indemnify Company's other contractors(s) (and its subcontractors or Group as referred to in such other contractor's contract) from and against all Claims/Losses for the following when Connected With this Contract:
(I) all injuries to, deaths, or illnesses of persons in the Contractor Group, and
(ii) all damages to or loses of Contractor's Property, <u>even if caused by the Negligence/Fault</u> of Company's other contractors(s) (or its subcontractors or Group, as applicable) or any other Person.

against Lawson, seeking defense and indemnity for Plaintiffs' claims in accordance with its interpretation of the cross-indemnification provisions contained in the Master Service Contracts. (Rec. Doc. 102-1, p. 4). Lawson refused to defend USES in this action, and USES subsequently hired Frilot, LLC, to provide legal services in defending against Plaintiff's claims. In November, 2013, both Plaintiffs reached a settlement agreement with USES and all claims against USES were dismissed. (Rec. Doc. 102-1, p. 5). Mr. Guity and Lawson reached a settlement agreement and his claims against Lawson have been dismissed. (Rec. Doc. 51). Mr. Quintero and Lawson also reached a settlement agreement, but this has yet to be finalized.[2]

On May 21, 2014, the Court granted summary judgment in favor of USES, finding that under the language of the Master Service Contracts, "USES is entitled to defense and indemnification by Lawson." (Rec. Doc. 96). As directed by the Order, on July 18, 2014, USES filed the instant motion, seeking a total of $184,783.00 in attorneys' fees and $17,195.36 in costs and expenses from Lawson. (Rec. Doc. 102-1, p. 1). On September 16, 2014, in its reply to Lawson's opposition, USES amended the amount sought to reflect a total of $183,991.00 in attorneys' fees and $16,228.93 in

---

[2] On November 22, 2013, the Court issued an order dismissing Mr. Quintero's claims against Lawson without prejudice, directing the parties to file a motion for summary judgment enforcing their compromise within sixty (60) days. (Rec. Doc. 57). As of that date, the Court has granted the parties five (5) extensions to consummate their settlement, with the most recent granted on September 22, 2014. (Rec. Doc. 119).

costs and expenses. (Rec. Doc. 117, p. 1).

<h2 style="text-align:center">PARTIES' ARGUMENTS</h2>

The parties do not contest that USES is entitled to attorneys' fees, however, there exists a dispute regarding the amount. USES argues that pursuant to the terms of the Lawson-BPA Master Services Contract, it is entitled to "*all* attorneys' fees, costs, and expenses incurred as a result of Lawson's refusal to comply with its contractual indemnity obligation." (Rec. Doc. 102-1, p. 6).

Lawson contends, however, that according to the language of the Court's order granting summary judgment in favor of USES, Lawson is mandated only to "indemnify USES against all claims made by Plaintiffs *against USES* in the above-captioned suit." (Rec. Doc. 96, p. 10). Lawson asserts that this language means that USES is not entitled to recover for attorneys' fees and costs incurred in relation to USES' cross-claim against Lawson.

USES also argues that the fees and costs sought are reasonable in light of a number of factors, including the gravity of Plaintiffs' claims, the extensive discovery procedures, and the need to hire an interpreter to facilitate Plaintiffs' claims. (Rec. Doc. 102-1, p. 8-12). USES further contends that the hourly rates charged by its counsel were reasonable considering the prevailing market rates and the attorneys' experience and skill. (Rec. Doc. 102-1, p. 12).

In response, Lawson argues that the fees and costs sought by

4

USES are not reasonable. Instead, Lawson contends that the invoices provided by USES reflecting the hours billed by USES' counsel are "rife with double billing, errors in billing, and excessive billing in time." (Rec. Doc. 109, p. 4). Lawson further asserts that the costs sought by USES should be reduced, because USES is not entitled to recovery of costs for computerized research, postage, express or courier delivery charges, telephone expenses, or telecopy expenses. (Rec. Doc. 109, p. 7-8).

## LEGAL STANDARD

The United States Court of Appeals for the Fifth Circuit uses a two-step analysis to calculate fee awards. *Hernandez v. U.S. Customs & Border Prot. Agency*, No. 10-4602, 2012 WL 398328, at *13 (E.D. La. Feb. 7, 2012) (Barbier, J.) (citing *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379 (5th Cir. 2010)). In the first step, the Court must calculate the "lodestar," which is accomplished "by multiplying the number of hours reasonably expended in the case by the prevailing hourly rate for legal services in the district." *Id.* (internal citations omitted).

In determining the number of hours billed for purposes of calculating the lodestar, the Court must "determine whether the requested hours expended by . . . counsel were reasonable in light of the facts of the case and the work performed. The burden of proving the reasonableness of the hours expended is on the fee applicant." *Hernandez*, 2012 WL 398328, at *13 (internal citations

omitted). The Court must also determine whether the records show that the movant's "counsel exercised billing judgment" and "should exclude all time billed for work that is excessive, duplicative, or inadequately documented." *Id.* at *14 (internal citations omitted).

In determining the hourly rates for purposes of calculating the lodestar, the Court must determine a reasonable rate for each attorney "at the prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation." *Id.* (internal citations omitted). The burden is on the fee applicant to submit "satisfactory evidence that the requested rate is aligned with prevailing market rates." *Id.* (internal citations omitted).

Next, "the second step allows the Court to make downward adjustments, or in rare cases, upward adjustments, to the lodestar amount based upon consideration of the twelve *Johnson* factors." *Id.* The twelve *Johnson* factors are the following:

> (1) the time and labor required
> (2) the novelty and difficulty of the questions
> (3) the skill requisite to perform the legal service properly
> (4) the preclusion of other employment by the attorney due to acceptance of the case
> (5) the customary fee
> (6) whether the fee is fixed or contingent
> (7) time limitations imposed by the client or the circumstances
> (8) the amount involved and the results obtained
> (9) the experience, reputation, and ability of the attorneys
> (10) the "undesirability" of the case
> (11) the nature and length of the professional relationship with the client

(12) awards in similar cases

*Johnson v. Ga. Highway Exp. Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989).

Courts apply "a strong presumption that [the lodestar] figure is reasonable." *Hernandez*, 2012 WL 398328, at *16. Nevertheless,

> [T]he Court must still consider the twelve *Johnson* factors ... . Though the Court need not be "meticulously detailed" in its analysis, it must nonetheless articulate and clearly apply the twelve factors to determine how each affects the lodestar amount. The Court should give special consideration to the time and labor involved, the customary fee, the amount involved and the results obtained, and the experience, reputation, and ability of counsel. ... However, to the extent that a factor has been previously considered in the calculation of the benchmark lodestar amount, a court should not make further adjustments on that basis.

*Id.* (internal citations omitted).

## DISCUSSION

Because the Court has previously determined that Lawson had a duty to defend and indemnify USES for the claims brought against it by Plaintiffs and failed to do so, USES is entitled to attorney's fees.

### A. Claim Against Lawson

The Court will first address Lawson's assertion that USES is only entitled to recover attorneys' fees and costs incurred with regards to defending the claims brought by Plaintiffs Guity and Quintero and not those related to the indemnity cross-claim filed

by USES against Lawson. Lawson relies on the Court's language in its Order and Reasons granting summary judgment in favor of USES in which it mandated, "It is further ordered that Lawson shall defend and indemnify USES against all claims made by Plaintiffs against USES in the above-captioned matter." (Rec. Doc. 96, p. 10). Lawson interprets this language to read that "Lawson should only have to indemnify USES for reasonable costs in the defending the primary claim made by Plaintiff against USES." (Rec. Doc. 109, p. 2). As such, Lawson contends that the attorneys' fees sought by USES should be reduced by a total of $47,248.50. (Rec. Doc. 109, p. 3). The Court finds this argument to be without merit.

The Court has determined that Lawson had a duty to indemnify and defend USES in the claims brought by Plaintiffs. (Rec. Doc. 102, p. 10). By failing to do so, Lawson breached its contractual obligations, causing USES to file a cross-claim seeking reimbursement for the expenses incurred in defending against Plaintiffs' claims. The attorneys' fees and costs sought by USES are the sole and direct result of Lawson's failure to honor its contractual duties. The language of the indemnity provisions contained in the Master Services Contract between Lawson and BPE specifically provides that Lawson has a duty to defend and indemnify USES "from and against *all* Claims/Losses . . . Connected With this Contract." (Rec. Doc. 91, p. 12) (emphasis added). As addressed by USES, the contract also defines "defend" to include

8

payment of "reasonable attorneys' fees . . . and other reasonable costs." (Rec. Doc. 91, p. 10; Rec. Doc. 117, p. 3). The cross-claim against Lawson is undoubtedly "connected with" the Lawson-BPE Master Services Contract,[3] and as such, Lawson has a contractual duty to indemnify USES for all attorneys' fees and other reasonable costs and expenses USES has incurred as a result of being forced to litigate this cross-claim. The mere fact that the Court did not clearly state that Lawson is required to pay attorneys' fees for this specific cross-claim in its Order and Reasons does not, as Lawson argues, imply that Lawson is not bound to do so. Under the terms of the Master Services Contract as well as this Court's prior Order and Reasons, Lawson is required to indemnify USES for all claims comprising this matter, and as such, the Court finds a reduction of attorneys' fees on this basis to be improper.

**B. Billing Judgment**

Lawson contends that the amount of attorneys' fees requested by USES is unreasonable because USES' attorneys' have failed to "exercise billing judgment." (Rec. Doc. 109, p. 3). The duty to exercise billing judgment "refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours." *Walker v. U.S. Dept of Housing and Urban Development*, 99 F.3d 761,

---

[3] The contract defines "Connected with" as "directly or indirectly arising out of, resulting from, or in any way connected with or related to." The contract further states that "the indemnities in this Contract are intended to be broad and cover all Claims/Losses in any way connected to the performance of the Contract." (Rec. Doc. 91, p. 11).

769 (5th Cir. 1996). The party seeking attorneys' fees is "charged with proving that they have exercised billing judgment," and "the proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Id.* at 770. Because of USES' alleged failure to exercise billing judgment, Lawson argues that the Court should impose a percentage reduction on the attorneys' fees requested to reflect its improper billing.

Lawson first asserts that the invoices provided by USES contain "approximately 15 instances of double billing for the same work." (Rec. Doc. 109, p. 4). USES denies that the invoices reflect any evidence of double billing, yet out of an abundance of caution have removed any "instances of questionable duplicative entries," totaling a deduction of $375.00 from the attorneys' fees they originally sought. Lawson also points to the fact that "several instances of work on *Guity* was billed under *Quintero*," and that the same work was billed in both cases. (Rec. Doc. 109, p. 4). Due to the distinctions in the Plaintiffs' Jones Act claims, USES' counsel was forced to defend the two claims separately, and thus create separate files for each claim. (Rec. Doc. 117, p. 3). USES argues that several entries noted by Lawson as evidence of double-billing "were not billed twice, but concerned both lawsuits and were divided evenly and included on both invoices." (Rec. Doc. 117, p. 5). Additionally, due to the overlap between the cases, the Court

finds it reasonable that entries may be mislabeled amongst the two plaintiffs, and this alone is not evidence of double billing. Due in part to Lawson's lack of evidence of double billing as well as USES' willingness to reduce the amount of fees sought to guard against any potentially questionable entries, the Court finds that no percentage reduction is appropriate on the basis of double billing.

Lawson next contends that USES failed to exercise billing judgment by billing excessive hours for work performed. (Rec. Doc. 109, p. 5). Despite the alleged "abundant" number of examples of excess billing presented by Lawson, the Court finds that USES has not engaged in excessive billing practices which would warrant a percentage reduction. Lawson first points to an invoice dated August 14, 2013 reflecting a total of 1.8 hours billed for telephone calls made to three men to alert them of their upcoming depositions. (Rec. Doc. 109, p. 5). This amount of time seems less excessive, however, in light of USES' explanation that there was "difficulty in communicating with the witnesses." (Rec. Doc. 117, p. 7). Lawson next argues that the billing of approximately two hours on November 14, 2013 to consult with experts regarding issues in the expert reports related to the *Guity* claims was excessive given that the *Guity* matter had settled on November 7, 2013. (Rec. Doc. 109, p. 5). However, although the *Guity* matter had settled, as of November 14, 2013, the *Quintero* case remained ongoing, and USES

asserts that "the expert reports issued in the *Guity* matter were reviewed as part of USES' counsel [sic] continuing obligation to defend the case." (Rec. Doc. 117, p. 7). The Court finds that two hours spent reviewing these reports for purposes of preparation in the *Quintero* case is not excessive.  Lawson also asserts that 3.8 hours billed for "researching electronic discovery consultants and calling them to get quotes" is unreasonable. (Rec. Doc. 109, p. 5). However, as noted by USES, considering the complex issues in these matters as well as the extensive documents, 3.8 hours does not appear to the Court to be an excessive amount of time to review this data. Finally, Lawson argues that a total of 6.25 hours billed to travel from New Orleans to Lake Charles on August 18, 2013 was excessive given that Mapquest provides that the approximate travel time should be 3½ to 4 hours. (Rec. Doc. 109, p. 6). While USES does not dispute the approximate travel time for driving, it notes that USES' counsel first traveled by plane to Houston from New Orleans then drove to Lake Charles to conduct multiple depositions in various locations over the span of a few days. (Rec. Doc. 117). In light of the mixed modes of transportation, this billing appears reasonable to the Court, and something that could have been easily made known to Lawson if it had merely inquired of USES.

Any discrepancies in actual work performed and the amount billed appear minimal at most. Because Lawson has failed to point to any evidence of extensive excessive billing or any other

deficiencies in USES' billing judgment, the Court will not apply a
percentage deduction to the amount of attorneys' fees requested.

**C. Lodestar Calculation**

After considering the specific rate and hours billed by each
attorney employed to defend USES, the Court finds that the lodestar
calculation provided by USES is not unreasonable.

**1. Allen J. Krouse**

USES seeks attorneys' fees for a total of 341.65 hours billed
by Allen J. Krouse (182.65 hours on the *Quintero* case and 159.00
hours on the *Guity* case) at the rate of $290 per hour. Mr. Krouse
is a partner at the firm of Frilot, L.L.C. and has over thirty (30)
years of experience in commercial litigation, specifically marine,
construction, contract, employment, toxic tort, class actions,
environmental and energy issues, and product liability law. (Rec.
Doc. 102-2, p. 3).

The Court will first determine the reasonableness of the
hourly rate for Mr. Krouse. Only two years ago, in 2012, this Court
found that in the Eastern District of Louisiana, a reasonable
hourly rate for an attorney who had been practicing law for over
eight (8) years and specialized in the field of law at issue was
$300.00 per hour. *Hernandez*, 2012 WL 398328, at *14-16. The Court
arrived at its conclusion after an analysis of multiple cases in
this district:

*See, e.g. Smith v. Sprint/United Mgmt. Co.,* 2011 [WL]

6371481 (E.D. La. Dec. 20, 2011) (awarding $290.00/hour for a partner with 16 years experience and $240/hour for an associate with 8 years of experience); *Construction South, Inc. v. Jenkins,* 2011 WL 3892225 (E.D. La. Sept.2, 2011) (awarding $350/hour for two partners with 36 and 30 years of experience; $200/hour for an associate with four years of experience; and $180/hour for an associate with two years of experience); *Atel Mar. Investors, LP v. Sea Mar Mgmt., LLC,* 2011 WL 2550505 (E.D. La. June 27, 2011) (awarding $250 for partner with 35 years of experience; $250 for a partner with 11 years of experience; and $175 for an associate with 2 years of experience); *Entergy La., L.L.C. v. The Wackenhut Corp.,* 2010 WL 4812921 (E.D. La. Nov.17, 2010) (awarding $175.00/hour to attorney with 16 years of experience); *Wilson v. Tulane Univ.,* 2010 WL 3943543 (E.D. La. Oct.4, 2010) (awarding $250.00/hour and $160.00/hour to attorneys with 25 and four years experience respectively); *Hebert v. Rodriguez,* 2010 WL 2360718 (E.D. La. June 8, 2010) (awarding $300.00/hour to partner with 33 years of experience); *Gulf Coast Facilities Mgmt., L.L.C. v. BG LNG Servs., L.L.C.,* 2010 WL 2773208 (E.D. La. July 13, 2010) (awarding $300.00/hour to attorneys with 17 years experience and $180.00/hour and $135.00/hour to attorneys with seven years and two years experience respectively); *Belfor USA Group, Inc. v. Bellemeade Partners, L.L.C.,* 2010 WL 6300009 (E.D. La. Feb. 19, 2010) (awarding $250.00/hour, $210.00/hour, and $180.00/hour to attorneys with 20, 10, and 4 years of legal experience, respectively); *Marks v. Standard Fire Ins. Co.,* 2010 WL 487403 (E.D. La. Feb. 3, 2010) (awarding $185.00/hour to attorney with seven years of experience).

*Id.* at *15.

Considering the cases discussed above, as well as Mr. Krouse's extensive experience, the Court finds that a fee of $290.00 per hour for Mr. Krouse's services is reasonable. Moreover, Mr. Krouse has informed the Court that in representing USES he reduced his standard billing rate of $325.00 per hour to $290.00 per hour.

14

Additionally, in light of the complexity and gravity of Plaintiffs' two distinct claims, a total of 341.65 billed hours appears reasonable. Lawson does not contest either Mr. Krouse's rate or his number of hours billed. Therefore, the Court finds that the lodestar figure for Mr. Krouse (341.65 hours at a rate of $290.00 per hour) is $99,078.50.

### 2. Suzanne M. Risey

USES seeks attorneys' fees for a total of 71.3 hours billed by Suzanne M. Risey (35.3 hours on the *Quintero* case and 36.00 hours on the *Guity* case) at the rate of $250 per hour. Ms. Risey is a partner at the firm and has sixteen (16) years experience in labor and employment law.  Given the cases cited above, the Court finds that a fee of $250.00 per hour for Ms. Risey's services is reasonable. A total of 71.3 hours appears to be a reasonable number of hours billed by Ms. Risey, and those hours are well-documented. Lawson has not challenged the hourly rate or number of hours billed by Ms. Risey. Therefore, the Court finds that the lodestar figure for Ms. Risey (71.3 hours at a rate of $250.00 per hour) is $17,825.00.

### 3. Brandon K. Thibodeaux

USES also seeks attorneys' fees for a total of 88.70 hours billed by Brandon K. Thibodeaux (42.90 hours on the *Quintero* case and 45.80 on the *Guity* case) at the rate of $150.00 per hour. Mr. Thibodeaux is an associate at the firm and has approximately five

(5) years of experience in commercial litigation and admiralty and maritime law. In light of the cases cited above, the Court finds that a fee of $150.00 per hour for Mr. Thibodeaux's services is reasonable. A total of 91.40 hours appears to be a reasonable number of hours billed by Mr. Thibodeaux, and those hours are well-documented. Lawson has not challenged the hourly rate or number of hours billed by Mr. Thibodeaux. Therefore, the Court finds that the lodestar figure for Mr. Thibodeaux (91.40 hours at a rate of $150.00 per hour) is $13,710.00.

### 4. Krystle M. Ferbos

USES also seeks attorneys' fees for a total of .80 hours (entirely on the *Quintero* case) at the rate of $160.00 per hour. Ms. Ferbos is an associate with the firm and has approximately three (3) years of experience in commercial litigation, mass tort, and class actions. In light of the cases cited above, the Court finds that a fee of $160.00 per hour for Ms. Ferbos's services is reasonable. A total of .80 hours appears to be a reasonable number of hours billed by Ms. Ferbos, and those hours are well-documented. Lawson has not challenged the reasonable hourly rate or number of hours billed by Ms. Ferbos. Therefore, the Court finds that the lodestar figure for Ms. Ferbos (.80 hours at a rate of $175.00 per hour) is $140.00.

### 5. Toni Ellington

USES also seeks attorneys' fees for a total of 63.20 hours

(31.50 on the *Quintero* case and 31.70 on the *Guity* case) at the rate of $150.00 per hour. Ms. Ellington is a former associate with the firm and has approximately fourteen (14) years of experience in general litigation, mass tort, personal injury litigation, products liability, toxic torts, and environmental law. Given the cases above, the Court finds that a fee of $175.00 per hour for Ms. Ellington's services is reasonable. A total of 63.20 hours appears to be a reasonable number of hours billed by Ms. Ellington, and those hours are well-documented. Lawson has not challenged the reasonable hourly rate or number of hours billed by Ms. Ellington. Therefore, the Court finds that the lodestar figure for Ms. Ellington (63.20 hours at a rate of $175.00 per hour) is $11,060.00.

### 6. Ashley Wheelock

USES also seeks attorneys' fees for a total of 1.70 hours (.70 on the *Quintero* case and 1.0 on the *Guity* case) at the rate of $150.00 per hour. Ms. Wheelock is a former associate with the firm and has approximately one (1) year of experience in medical malpractice and healthcare. Given the cases above, the Court finds that a fee of $150.00 per hour for Ms. Wheelock's services is reasonable. A total of 1.7 hours appears to be a reasonable number of hours billed by Ms. Wheelock, and those hours are well-documented. Lawson has not challenged the hourly rate or number of hours billed by Ms. Wheelock. Therefore, the Court finds that the

lodestar figure for Ms. Wheelock (1.7 hours at a rate of $150.00 per hour) is $255.00.

**D. Johnson Factors**

As discussed above, these lodestar figures are presumptively reasonable, but the Court must nevertheless consider the twelve *Johnson* factors to determine whether they warrant a downward adjustment or, in rare cases, an upward adjustment.

### 1. Time and Labor Required

The Court finds that the lodestar amounts calculated above fairly account for the time and labor expended by each attorney in this case, and so no upward or downward adjustment of the lodestar calculation is warranted based on this factor.

### 2. Novelty and Difficulty of the Questions

The Court finds that the issues in this case were not sufficiently novel or difficult to warrant an upward adjustment of the lodestar calculation.

### 3. Skill Requisite to Perform the Legal Service Properly

The skill of each attorney is already accounted for in the lodestar calculations.

### 4. Preclusion of Other Employment

There is no contention in this case that the attorneys were precluded from taking other employment by virtue of the time and resources required to be expended in this case, and the Court therefore finds that this factor does not warrant an upward

adjustment of the lodestar amount.

## 5. Customary Fee

The customary fees charged by each attorney are already accounted for in the lodestar calculations.

## 6. Fixed or Contingent Fee

The Court finds that this factor does not warrant an upward or downward adjustment of the lodestar amount.

## 7. Time Limitations Imposed by Client or Circumstances

The Court finds that there were no particular time limitations or constraints imposed on Counsel in this matter that would warrant an upward or downward adjustment.

## 8. Amount Involved and Results Obtained

Counsel for USES achieved the results they sought, and this factor is already accounted for in the lodestar calculations.

## 9. Experience, Reputation, and Ability of Attorneys

The experience, reputation, and ability of each attorney is already accounted for in the lodestar calculations.

## 10. Undesirability of the Case

There is no contention in this case that the this case was undesirable, and the Court therefore finds that this factor does not warrant an upward adjustment of the lodestar amount.

## 11. Nature and Length of Professional Relationship with Client

USES has recognized that Partner Allen J. Krouse discounted

19

his customary fee of $325 per hour to $290 per hour for the *Guity* and *Quintero* claims, as well as the cross-claim brought against Lawson, however, the reason for this discount has not been provided to the court. As such, this factor does not warrant an upward adjustment from the lodestar amounts.

## 12. Awards in Similar Cases

This factor is neutral because the Court already considered recent awards of attorneys' fees in this district and took those awards into account when calculating the lodestar amounts.

Because it appears that none of the *Johnson* factors warrants an upward or downward adjustment from the lodestar amounts, the Court finds that the lodestar amount calculated for each attorney – a total of $183,991.00[4] – is the correct award in this case.

### E. Costs/Expenses

In addition to attorneys' fees, USES also seeks $17,195.36 in costs and expenses.[5] (Rec. Doc. 102, p. 1). With respect to costs and expenses, the Supreme Court of the United States has held that "federal courts may only award those costs articulated in [18 U.S.C. § 1920] absent explicit statutory or contractual authorization to the contrary." *Mota v. Univ. of Tex. Houston*

---

[4] Considering a voluntary reduction in attorney's fees in the amount of $792.00 imposed by USES in its Reply. (Rec. Doc. 117, p. 1).

[5] In its reply, USES has adjusted the amount of costs and expenses sought to $16,228.93 in order to reflect a deduction of questionable costs included in its original request. (Rec. Doc. 117, p. 1).

*Health Science Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001) (quoting *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987)). The language of the Lawson-BPE Master Services Contract reflects that USES is entitled to indemnification for costs incurred in the claims involved in this matter.[6] As such, despite the limitations of 18 U.S.C. § 1920, the Court finds that USES is contractually entitled to "reasonable costs" and expenses within the Court's discretion.

Lawson contends that the amount sought by USES for costs and expenses should be reduced by a total of $2,290.04 for non-taxable costs including courier expenses, postage, telephone expenses, and telecopy expenses. (Rec. Doc. 109. p. 8). A district court has discretion to deny all costs and expenses when the party seeking the costs has not provided an itemized breakdown of the costs incurred and reasons for their necessity. *See Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991). Because neither party has provided an itemized breakdown of the costs they are disputing, other than the extensive invoices, the Court, after reviewing the invoices, finds that a reduction of $2,290.04 in the amount sought by USES is appropriate. As such, the Court agrees with Lawson that

---

[6] As discussed in more detail above, the Master Services Contract provides that Lawson will defend and indemnify USES "from and against all Claims/Losses . . . Connected With this Contract." (Rec. Doc. 91, p. 12). The Contract specifically defines the term "defend" to "include the obligation to pay reasonable attorneys' fees, *court costs, expert fees, and other reasonable costs incurred . . .* as a result of defending against a Claim/Loss." (Rec. Doc. 91, p. 11)(emphasis added).

an award of $14,905.32 for costs and expenses is reasonable.

**CONCLUSION**

Accordingly,

    **IT IS HEREBY ORDERED** that *United States Environmental Services, L.L.C.'s Motion for Attorney's Fees and Costs* **(Rec. Doc. 102)** is **GRANTED in part.**

    **IT IS FURTHER ORDERED** that Lawson shall pay to USES $183,991.00 in attorneys' fees and $14,905.32 in costs.

    New Orleans, Louisiana this 23rd day of September, 2014.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE